### 947. ROME RAILWAY & LIGHT COMPANY *v.* KEEL.

1. To attempt to mount a slowly moving street-car is not necessarily negligent.
2. An allegation in pleading which contradicts anything of which the court must take judicial cognizance is absolutely nugatory and will be disregarded.
(*a*) The courts are required to take notice of primary physical laws.
(*b*) Fairly construed, the petition in this case asserts a physical impossibility and is therefore demurrable.
3. The special demurrers are not meritorious.

Action for damages, from city court of Floyd county—Judge Hamilton. December 9, 1907.

Argued February 18,—Decided February 24, 1908.

*Dean & Dean,* for plaintiff in error.

*Seaborn & Barry Wright,* contra.

POWELL, J. Keel sued the Rome Railway and Light Company, alleging, in his petition: The defendant is a street-railway com-

pany. Plaintiff was at one of the defendant's stations, preparing to board a car as a passenger. As the car approached he signaled the motorman to stop, and the motorman saw the signal and wound up the brakes, but failed to get the car to a complete stand at the station, and went past it. As the car passed, plaintiff boarded the step of the front platform safely. The motorman saw him. As plaintiff was stepping from the step of the car to the platform, the motorman threw off the brakes; the car jumped forward and jerked, knocked and threw the plaintiff off the car, he was thrown under the wheels, and certain enumerated injuries ensued, to the damage of the plaintiff. The plaintiff was 17 years old, was an apprentice moulder, earning $3 per day, and by the time he reached 21 years of age would have been earning $6 per day had the injury not occurred. It is alleged that the defendant was negligent, in that the motorman threw the brakes off said car and caused and allowed it to jump forward and throw petitioner off.

The defendant demurred, on the grounds: No cause of action is alleged; the proximate cause of the injury was plaintiff's negligence in attempting to board the front platform of a moving car; the allegations of negligence are too vague and indefinite; also specially that it is not alleged how far the car was from plaintiff when he signaled it; also that it is not alleged that the loosening of the brakes was done in an unusual or negligent manner; nor is it alleged that the jump forward and jerk of the car was in any way unusual or out of the ordinary way of the movement of cars; the allegation that the plaintiff was without fault states a mere conclusion of the pleader; and the allegation that by the time he reached 21 years of age he would have been earning $6 per day is speculative and indefinite. This demurrer was overruled, and the defendant excepts.

1. To attempt to mount a slowly moving street car is not necessarily negligent. If while the passenger is getting upon the car the motorman, by producing an unusual and unnecessary jerk, throws him off, a liability against the company may be predicated thereon. Also a sudden acceleration of the speed while the passenger is in the act of getting aboard may be negligent. *White* v. *Atlanta Consolidated Street Ry. Co.*, 92 *Ga.* 494; *Gainesville Mid. Ry.* v. *Jackson*, 1 *Ga. App.* 632. In *Ricks* v. *Ga. Sou. & Fla. Ry. Co.*, 118 *Ga.* 259, a recovery was denied because the sudden

acceleration of the train had begun and was already dangerous when the plaintiff tried to catch a car rail which he missed. In the transaction now before us, if safe entrance into the car was reasonably practicable at the time the plaintiff attempted to mount, and the motorman negligently did something to render it dangerous, a liability might be predicated; but if the attempt was fraught with danger ab initio, and the motorman did nothing to increase the danger, the plaintiff should not recover, though he succeeded in accomplishing a part of what was attempted without actually encountering injury.

2. The defendant's liability to the plaintiff, however, rests solely on the allegation that the releasing of the brakes was negligence; and this act, which is a casual and ordinary act in the operation of cars, and which is not in the particular instance averred to have been unusual or unnecessary, depends for its sufficiency for that purpose upon the effect alleged, that it caused the car to jump forward and to jerk petitioner off. This must be viewed in the light of the other allegations of the petition. It is stated that the car was approaching a usual stopping place and that the motorman was in the act of bringing it to a stop, that he had the brakes on. The petition does not allege whether the electric current was off or on; but, especially in the absence of a direct allegation on this point, it is proper for us to assume that the current was off, this being the usual condition of a car when a stop is about to be made or when the brakes are applied. There is no allegation that concurrently with the release of the brakes the power was turned into the motors. The case rests solely upon the proposition that a release of the brakes caused the car to jump forward with a jerk; a proposition wholly contradictory of the laws of physics and to ordinary experience. Leaving out of consideration external causes, including condition of the track, curves, etc., we dare say that no motorman can impart a jerk to his car by releasing his brakes or by throwing off his current. Jerks and jolts come from throwing on the brakes or the current, active forces that tend to disturb the inertia.

The only forces tending to propel a car, when the current is off, are its momentum and, if the track be down-grade, gravity. Opposed to both of these forces is friction. We will first consider the car to be running on level ground; here the momentum is

gradually expended in overcoming the friction, and the car will slowly stop. The application of brakes increases the friction so that the momentum is the more quickly overcome and the speed undergoes a rapid reduction. If you release the brakes, i. e. remove the excess friction, you do not add to the momentum, you merely subtract from the friction, and there results, not an increase of speed, a jumping forward of the car, but merely a constant but less rapid reduction of speed. If the car is running down-grade, gravity as well as momentum is opposed to friction and may be strong enough to keep the car in motion and to accelerate it despite the friction. In this case as in the other, the application of brakes, by adding to the friction, tends to overcome the forces of gravity and the momentum of the car, and a reduction of speed ensues. If, now, the brakes be released, there may result not only a diminution in the degree at which the speed is being reduced, but an actual acceleration of the car; but now, as before, there can be no sudden jerk, for gravity, through a well-known law, produces a uniform acceleration. Under these laws of nature, of which the court must take judicial notice, a sudden jump or jerk of the car can not be produced by merely throwing off the brakes; something else must concur to produce these effects. We are made surer that this a priori reasoning is not fallacious, by the corroboration of actual personal observation; though the judgment of the court must rest upon the application of the physical laws, and not on the personal experience; for knowledge of the latter nature can not extend the court's judicial cognizance. By experiments personally observed by the writer through the courtesy of a local motorman, he finds that when the current is not on, the releasing of the brakes does not, whether on level ground or on down-grade, produce any sudden jerk or jump of the car. On down-grade there is usually a smooth, gradual acceleration; on level track, by an illusion, the car seems to gain speed when the brake is first released, but closer observation shows that in fact there is no acceleration, but only a change from rapid to slow reduction of speed. Thus, a posteriori, we reach the same result to which our a priori reasoning led, that it is physically impossible that a release of the brakes alone could have produced the result claimed; and no other cause is shown. We may say further that, after our minds reached this conclusion, we submitted the opinion,

for verification, to the professor of physics in one of the leading technical institutions of the country, and he says, in reply: "You are entirely correct in your reasoning and deductions as indicated in your paper which I enclose. The laws of physics justify the conclusion you have arrived at."

A party will not be permitted to maintain in his pleadings a contradiction of those things of which the court is required to take judicial cognizance. Of the primary physical laws the courts must take notice. 16 Cyc. 854 (8). Therefore the pleading is demurrable when it sets up a contradiction of these laws. Since a physical impossibility can not exist at all, it can not be admitted even by demurrer. Such an allegation must be treated by the courts just as they would treat an allegation that what is not law is law, i. e. it must be wholly disregarded. Therefore the court erred in not sustaining the general demurrer. Compare *McEwen* v. *Atlanta Ry. Co.*, 120 *Ga.* 1008.

3. As the plaintiff may seek still to avoid the dismissal of his action, by an amendment made before the remittitur is filed, we deem it proper to pass upon the special demurrers. The demurrer on the ground that the distance plaintiff was from the car when he gave the signal is not meritorious. *Cedartown Cotton Co.* v. *Miles*, 2 *Ga. App.* 79 (1, a), (58 S. E. 289). Nor is the demurrer to the categorical allegation that the plaintiff was without fault good. *Jarrell* v. *American Pipe Bending Co.*, 2 *Ga. App.* 764 (14), (59 S. E. 188); *Georgia Midland R. Co.* v. *Evans*, 87 *Ga.* 673, 675. The demurrer to the paragraph alleging that the plaintiff's earning capacity would increase is not well taken. *Central Ry. Co.* v. *Minor*, 2 *Ga. App.* 804 (59 S. E. 81).

*Judgment reversed.*